IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN G. JACOBS, | CV 16-61-M-DWM-JCL |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATION |
| BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A.; and SPECIALIZED LOAN SERVICING,LLC, | |
| Defendants. | |

Plaintiff John Jacobs ("Jacobs") brings this action alleging several claims arising from the settlement of an underlying lawsuit he brought against Defendants Bank of America, N.A., ReconTrust Company, N.A., and Specialized Loan Servicing, LLC ("SLS") for wrongful foreclosure. Defendants have moved for summary judgment on all claims. The motions should be granted in part and denied in part as set forth below.

I.    **Background**

In January 2007, Jacobs obtained a loan from Countrywide Home Loans, Inc., for the purpose of purchasing a home in Missoula, Montana. The loan was

1

secured by a Deed of Trust. In 2008, Defendant Bank of America, N.A. became the servicer of Jacobs' loan. Jacobs became past due on his mortgage payment in October 2010, and Bank of America initiated non-judicial foreclosure proceedings. In September 2011, Bank of America executed a Substitution of Trustee appointing its wholly-owned subsidiary, ReconTrust, as the successor trustee. A Trustee's Sale of the Property was set for January 27, 2012.

On January 17, 2012, Jacobs filed suit in state court against Bank of America, ReconTrust, and SLS to enjoin the sale of the property and recover damages for wrongful foreclosure. The sale was enjoined, and in November 2013 Bank of America transferred servicing of the loan SLS. The parties settled the case at a mediation in April 2014, and memorialized the terms of the settlement in a Settlement Agreement and Release ("the Agreement") signed by Jacobs, Bank of America, and ReconTrust. Jacobs, who was represented by an attorney, agreed to accept $17,500 in full satisfaction of the claims he advanced against all three defendants in the lawsuit. The Agreement did not relieve Jacobs or the Defendants of their respective rights and obligations with regard to the underlying load and Deed of Trust.

Consistent with the terms of the Agreement, Jacobs vacated the property in June 2014, and Bank of America instructed SLS that the litigation hold on Jacobs'

loan had been lifted. Nearly two years passed before the successor trustee issued a Notice of Trustee's Sale in April 2016. The property sold at the trustee's sale on September 1, 2016. In the approximate two year period between the time the parties executed the Agreement in July 2014 and the trustee's sale in September 2016, SLS furnished information to credit reporting agencies regarding the status of Jacobs' loan as past due or in foreclosure, and continued sending him monthly statements, demand letters, default notices, loan modifications notices, and other documents.

It was also during this two year period that Jacobs initiated the instant action. Jacobs filed his complaint in state court in February 2016, and with the consent of the other Defendants, ReconTrust timely removed the case to this Court based on diversity jurisdiction. Jacobs asserts claims against all Defendants for Breach of Contract (Count I), Tortious Breach of Duty of Good Faith and Fair Dealing (Count II), violation of Montana Unfair Trade Practices and Consumer Protection Act (Count III), and Equitable Relief (Count IV). Generally speaking, Jacobs alleges that Defendants breached the Agreement and other obligations by failing to foreclose on the property within a reasonable time, wrongfully furnishing information about his loan to three credit reporting agencies, and wrongfully sending him default notices and other communications as if no

settlement had been reached.  Defendants have moved for summary judgment on all claims.

## II.    <u>Summary Judgment Standards</u>

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial must produce evidence that  either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id*. at

248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III. Discussion

### A. Breach of Contract

Jacobs' breach of contract claim alleges that Defendants breached the Agreement by failing to foreclose on the property in a reasonable time, furnishing information regarding the status of his loan to credit reporting agencies, and sending him monthly statements, demand letters, default notices, loan modifications notices, and other documents.

Defendants argue they are entitled to summary judgment because the undisputed evidence establishes that they did not breach the terms of the Agreement, and Jacobs has not submitted any evidence of compensable damages. To the extent Jacobs alleges breach of contract based on negative credit reporting,

Defendants further argue that his claim is preempted by the Fair Credit Reporting Act. 15 U.S.C. § 1681 et seq. ReconTrust also moves for summary judgment on the additional ground that it did not have any obligations under the Agreement or any ability to enforce its terms.

1. Breach

Defendants contend Jacobs' claim that Defendants breached the Agreement by not foreclosing within a reasonable time fails as a matter of law because they did not have any contractual obligation to foreclose at all, much less within a specific time period.

"The construction and interpretation of a contract, including the existence of any ambiguities in the provision of a contract is a question of law. *Riehl v. Cambridge Court GF, LLC*, 226 P.3d 581, 587 (Mont. 2010) (citations omitted).[1] The language of a contract is unambiguous if it is susceptible to only one construction. *Ophus v. Fritz*, 11 P.3d 1192, 1196 (Mont. 2000). If the language is unambiguous, the duty of the court is to apply the language as written. *Ophus*, 11 P.3d at 1196. And the Court the can look no further. *Anaconda School Distr. No.*

---

[1] Because jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

*10 v. Whealon*, 268 P.3d 1258, 1262 (Mont. 2007).

"'An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations.'" *Riehl*, 226 P.3d at 587 (quoting *West v. Club at Spanish Peaks, L.L.C.*, 186 P.3d 1228, 1240 (Mont. 2008). "The existence of an ambiguity must be determined on an objective basis, and an ambiguity exists only if the language is susceptible to at least two reasonable but conflicting meanings. *Riehl*, 226 P.3d at 587 (quoting *Performance Machinery Co., Inc. v. Yellowstone Mountain Club, LLC*, 169 P.3d 394, 402 (Mont. 2007)). Consequently, a conclusion that the language is ambiguous is not compelled simply by the fact the parties to the contract offer conflicting interpretations. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Cooperatives, Inc.*, 164 P.3d 851, 857 (Mont. 2007). Where a court concludes the language at issue is ambiguous, then extrinsic evidence may be presented to the trier of fact to determine the intent of the parties in entering the contract. *Mary J. Baker Revocable Trust*, 164 P.3d at 866-67.

Defendants argue that while Jacobs consented to a non-judicial foreclosure, they had no obligation under the Agreement to actually proceed with such a foreclosure. Defendants note that by statute, a creditor under a trust indenture has the power to non-judicially foreclose, but is not obligated to do so. Mont. Code

Ann. § 71-1-304(3). Defendants maintain the Agreement did not impose any such obligation either, and in fact specifically stated that "[t]he Payment and not the uncontested foreclosure is the consideration for this Agreement and terms herein, including but not limited to the release." (Doc. 31-2, at 2). At bottom, Defendants' argument is that Jacobs simply agreed not to contest a non-judicial foreclosure when and if Defendants chose to conduct one.

According to Jacobs, however, it would be nonsensical to read the Agreement as requiring Jacobs to consent to a non-judicial foreclosure, without also requiring Defendants to proceed with foreclosure. He argues the Agreement's "Uncontested Foreclosure" provision makes clear that Defendants were to foreclose on the property. That "Uncontested Foreclosure" provision reads as follows:

> **Uncontested Foreclosure.** PLAINTIFF having acknowledged that he defaulted under the terms and conditions of the Note, Deed of Trust andor Mortgage, hereby consents to SERVICER, and/or its agents, affiliates, parents, subsidiaries, successors in interest and assigns, including any or all persons claiming an interest in the Note, Deed of Trust and/or or Mortgage and their successors and assigns, proceeding with a non-judicial foreclosure of the Property. PLAINTIFF expressly waives any and all rights and defenses he may have to challenge or contest said foreclosure including, but not limited to, any claims or defenses contesting his default under the Note, Deed of Trust and/or Mortgage or contesting the validity of the foreclosure process or sale.

> (Doc. 31-2, at 3).

Jacobs argues the fact that he expressly consented to Defendants proceeding with a non-judicial foreclosure can only mean that the parties intended and understood that Defendants would in fact foreclose. It is Jacobs' position that the Agreement modified the terms of the underlying Deed of Trust by obligating Defendants to foreclose or was at least ambiguous on this point, thereby making the question of what the parties intended one for the trier of fact.

For purposes of determining whether the Agreement was ambiguous Jacobs asks the Court to consider a Memorandum of Negotiated Settlement Terms signed by the parties before they executed the Agreement. (Doc. 77-1). The Memorandum states that "Defendants shall... [p]roceed with a non-judicial foreclosure of its deed of trust on said home." (Doc. 77-1, at 2). Jacobs argues that under the Montana Supreme Court's decision in *Mary J. Baker Revocable Trust*, the Court can consider the Memorandum as "evidence of the circumstances under which the contract was made" for purposes of determining whether the Agreement was ambiguous. *Mary J. Baker Revocable Trust*, 164 P.3d at 857. But the Memorandum cannot fairly be considered evidence of the circumstances under which the Agreement was made. It is classic parol evidence, which may not be considered by the Court when assessing ambiguity and should instead be considered by the trier of fact to determine the intent of the parties only if the

terms of the Agreement itself are ambiguous.

The Court agrees with Jacobs that on its face, the Agreement is ambiguous because it is reasonably subject to two different interpretations on the issue of whether Defendants were required to foreclose. On the one hand, the Agreement and its "Uncontested Foreclosure" provision can reasonably be read as requiring Defendants to proceed with the foreclosure to which Jacobs' expressly consented. On the other hand, the Agreement can reasonably be read as allowing, rather than requiring, Defendants to foreclose. As Defendants point out, for example, the Agreement identified the $17,500 payment Jacobs received "and not the uncontested foreclosure" as the consideration. (Doc. 31-2, at 2). And the Agreement specifically stated that to the extent it kept "the Loan and underlying Note, Deed of Trust and/or Mortgage in force (as modified or otherwise herein), this Agreement shall not alter the rights, duties and obligations of said Loan by the Parties, including but not limited [] to such actions as acceleration and foreclosure as may be appropriate in the event of a future default." (AR 31-2, at 8). These provisions can reasonably be interpreted as allowing, but not requiring, Defendants to proceed with an uncontested foreclosure. Because the Agreement is ambiguous, the intent of the parties and whether the Defendants had a contractual obligation to foreclose is a question for the trier of fact.

Even assuming they had a contractual obligation to proceed with foreclosure, Defendants argue the undisputed evidence establishes they did so within a reasonable time. Where, as here, a contract does not specify the time for performance, a reasonable time is allowed. Mont. Code. Ann. § 28-3-601. A "'[r]easonable time' is defined to be so much time as is necessary, under the circumstances, to do conveniently what the contract or duty requires should be done in a particular case." *Dambrowski v. Champion International Corp.*, 76 P.l3d 1080, 1082 (Mont. 2003).

It is undisputed that more than two years passed between the time the parties executed the Agreement in July 2014 and the property was finally sold at the trustee's sale in September 2016. Defendants maintain this two year period was reasonable, however, because they could not foreclose without first complying with new federal mortgage servicing regulations, which went into effect in January 2014. For support, Defendants rely on a declaration provided by loan servicing expert Julia Leah Greenfield, who explains that the default notices and other documents Jacobs complains about having received during that two year period were in conformance with the new mortgage servicing standards. (Doc. 64-7, at 6). Defendants also rely on the declaration of SLS's Vice President of Customer Support, Fred Korb, who states that SLS could not foreclose on the

property until it had complied with applicable federal regulations by sending certain notices of default and loss mitigation options. (Doc. 64-8, at 4).

Jacobs argues both opinions are inadmissible because they amount to conclusions of law, which are not the proper subject of expert testimony under Federal Rules of Evidence 702 and 704. Jacobs contends that Korb's opinion is also inadmissible because Defendants did not disclose him as an expert under Fed. R. Civ. P. 26(a). Jacobs further argues that both opinions are wrong because the the federal mortgage servicing regulations did not require Defendants to continue sending default notices and other communications following a "cash-for-keys" settlement like the one reached here.

But even assuming Greenfield's and Korb's opinions are both admissible and correct, whether Defendants foreclosed within a reasonable period of time is a question of fact. While Greenfield states that the communications SLS sent Jacobs during the two year period before it sold the property were in compliance with federal regulations, she does not address the question of whether those communications and subsequent foreclosure sale could reasonably have been accomplished more quickly. Korb does not address that question either. He simply states that SLS could not foreclose on the property until it had complied with federal mortgage servicing regulations. Assuming Defendants were

contractually obligated to foreclose, whether it was reasonable for that process to take nearly two years is a question for the trier of fact. To the extent Jacobs alleges Defendants breached the Agreement by not foreclosing within a reasonable time, there are genuine issues of material fact precluding summary judgment.

To the extent Jacobs alleges Defendants breached the Agreement by sending him default notices and other communications, however, his breach of contract claim fails as a matter of law. Nothing in the Agreement prohibited Defendants from sending Jacobs the default notices and other communications he complains of. Absent a contractual provision prohibiting such communications, Defendants cannot be in breach for sending them.

Jacobs' claim that Defendants breached the Agreement by furnishing information regarding the status of his loan to credit reporting agencies fails for the same reason. Nothing in the Agreement prohibited Defendants from engaging in credit reporting activities, which means they cannot be in breach for doing so.

2.    Preemption

 Even if there was such a contractual prohibition, any claim that Defendants breached the Agreement by engaging in credit reporting activities is preempted by the Fair Credit Reporting Act. Defendants are correct.

The Fair Credit Reporting Act provides in pertinent part that "[n]o

requirement or prohibition may be imposed under the laws of any State...with respect to any subject matter regulated under... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Several district courts in the Ninth Circuit, including this one, have held that § 1681t(b)(1)(F) preempts state statutory and common law claims alleging damages based on the reporting of credit information to credit agencies. See *Martinez v. Flagstar Bank, FSB*, 2016 WL 3906810 *5-6 (E.D Cal. July 19, 2016) (citing cases); *Roybal v. Bank of America, N.A,* 2015 WL 1534118 *3 (D. Mont. Apr. 6, 2015).

In *Roybal*, the plaintiff brought suit alleging that defendant Bank of America breached an oral promise to modify the plaintiff's home loan, and committed various other torts while servicing the loan. *Roybal*, 2015 WL 1534118 *1. The plaintiff alleged several state statutory and common law claims, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Montana Consumer Protection Act. *Roybal*, 2015 WL 1534118 *3. The Court agreed that to the extent those claims were based on negative credit reporting, they were preempted by § 1681t(b)(1)(F) of the Fair Credit Reporting Act. *Roybal*, 2015 WL 1534118 *3. Here, as in *Roybal*, Jacobs' breach of contract claim is preempted to the extent it seeks

damages based on Defendants' alleged credit reporting activities.[2]

     3. <u>Damages</u>

Defendants also move for summary judgment on Jacobs' breach of contract claim on the ground that he has not come forward with evidence of compensable damages. Damages are an essential element of a claim for breach of contract. See *Sebena v. American Auto. Ass'n.* 930 P.2d 51, 54 (Mont. 1996). In his initial and amended complaints, Jacobs alleged that he suffered economic harm as a result of Defendants' breach of the Agreement. (Doc. 1-1, at 4, Doc. 31, at 5-6). But Jacobs now concedes that he has not incurred any economic or calculable damages and is seeking only nominal damages for his breach of contract claim. He argues nominal damages for breach of contract are permissible under Mont. Code. Ann. § 27-1-204, which provides that "[w]hen a breach of duty has caused no appreciable detriment to the party affected, the party may recover nominal damages." Defendants agree that Jacobs may recover nominal damages for breach of contract, notwithstanding the fact that he has not incurred any actual damages. (Doc. 89, at 3).

---

[2] Under the same line of authority, Jacobs' claims for tortious breach of the implied covenant of good faith and fair dealing and violations of the Montana Consumer Protection Act are similarly preempted to the extent they are based on Defendants' alleged credit reporting activities.

In his Complaint, Jacobs also asks for emotional distress damages based on Defendants' alleged credit reporting activities and the default notices and other communications he received. To the extent Jacobs claims emotional distress damages based on Defendants' alleged credit reporting activities, however, his claim is preempted by the Fair Credit Reporting Act as discussed above. To the extent Jacobs claims emotional distress damages based on the default notices and other communications Defendants sent him after they executed the Agreement, Defendants argue such damages are not recoverable on a claim for breach of contract under Montana law. Jacobs does not dispute the well-established principle that emotional distress damages, regardless of severity, cannot be recovered for breach of contract unless the plaintiff suffers physical injury. *Maloney v. Home & Investment Center, Inc.*, 994 P.2d 1124, 1136 (Mont. 2000). Jacobs again explains that he is only asking for nominal damages on his breach of contract claim, and instead argues he is entitled to recover emotional distress damages for tortious breach of the implied covenant of good faith and fair dealing.

### B. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Jacobs has alleged a claim for tortious breach of the implied covenant of good faith and fair dealing for which he is seeking emotional distress damages.

Montana law recognizes that every contract "contains an implied covenant of good faith and fair dealing." *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116, 121 (Mont. 2007) (citation and quotation omitted). "[T]he covenant is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007) (citation and quotation omitted). A breach of the implied covenant constitutes a breach of the contract, and a plaintiff need not establish a breach of an express provision of the contract to prevail on a claim for breach of the implied covenant. *McCoy v. First Citizens Bank*, 148 P.3d 677, 681 (Mont. 2006) (quotation and citation omitted).

"The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties." *Cate v. First Bank (N.A.) Billings,*, 865 P.2d 277, 279 (Mont. 1993). The standard of conduct imposed by the implied covenant is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *McCoy v. First Citizens Bank*, 148 P.3d 677, 681 (Mont. 2006) (quoting *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990)).

"In the great majority of ordinary contracts," a breach of the implied

covenant of good faith and fair dealing only gives rise to the recovery of contract damages. *Story v. City of Bozeman*, 791 P.2d 767, 791 (Mont. 1990). A claim for tortious breach of the implied covenant of good faith and fair dealing may only be brought where there is a special relationship between the parties. *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1176 (Mont. 2014). This means that tort-type damages, like the emotional distress damages Jacobs seeks here, can be recovered only where there is a "special relationship" between the parties.

Defendants argue Jacobs' claim for tortious breach of the implied covenant of good faith and fair dealing fails as a matter of law for several reasons. First, Defendants contend that because the Agreement did not expressly prohibit them from sending Jacobs default notices and other communications, their allegedly wrongful conduct in doing so was not covered by the implied covenant. Second, Defendants argue that even if the implied covenant covered the conduct alleged, there was no breach because the communications they sent were honest in fact and in observance of reasonable commercial standards in the trade. Third, Defendants argue that even if Jacobs can establish a breach of the implied covenant, he cannot recover emotional distress or other tort type damages because all of the elements of a special relationship are not present. Finally, Defendants maintain that even if there is a special relationship between the parties, Jacobs cannot recover for just

emotional distress as a parasitic element of damages in a claim for tortious breach of the implied covenant.

Because it is dispositive, the Court begins with Defendants' third argument that Jacobs is not entitled to emotional distress damages for breach of the implied covenant because he cannot establish the existence of a special relationship between the parties.

Montana has adopted the following elements of a special relationship: (1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a non-profit motivation; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its action, and (b) they do no make the injured party whole; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability. *Story*, 791 P.2d at 776 (citing *Wallis v. Superior Court*, 207 Cal. Rptr. 123, 129 (Cal. App. 1984)). If there is a lack of substantial evidence as to one or more of these elements, there is no special relationship as a matter of law. *Story*, 791 P.2d at 776.

Defendants argue Jacobs cannot satisfy the first element because the undisputed facts establish that the parties to the Agreement were not in inherently

unequal bargaining positions.  The Court agrees.  The mere fact that Jacobs is an individual and Defendants are large corporate entities is not enough to establish that parties had unequal bargaining power.  It is undisputed that the Agreement was negotiated at a mediation conducted by a neutral mediator, and all parties were represented by counsel.  Jacobs and his counsel had more than a month to review the Agreement drafted by defense counsel, and were free to negotiate changes to the document.  Because the Agreement was freely negotiated by the parties, all of whom were represented by counsel, the Court finds the parties were not in inherently unequal bargaining positions.  Because Jacobs cannot establish the first element, the Court need not consider the remaining elements and finds as a matter of law that there is no special relationship between the parties.  Absent a special relationship, Jacobs' claim for tortious breach of the implied covenant of good faith and fair dealing fails as a matter of law and he cannot recover emotional distress damages.

### C.    Montana's Consumer Protection Act

Jacobs brings a claim under the Montana Consumer Protection Act, which provides in relevant part that "[a] consumer who suffers any ascertainable loss of money or property, real or personal, as a result of" an unfair or deceptive practice may bring an action "to recover actual damages or $500, whichever is greater."

Mont. Code Ann. § 30-14-133(1).  The terms "actual damages" includes damages for emotional distress.  *Lorang v. Fortis Insurance Co.*, 192 P.3d 186 (Mont. 2008).  To recover actual damages, the consumer must first have an "ascertainable loss of money or property."  Mont. Code Ann.  § 30-14-133(1).

Defendants maintain that Jacobs has not come forward with any evidence that he suffered an ascertainable loss of money or property as a result of an allegedly unfair or deceptive practice.  Jacobs does not claim to have suffered an ascertainable loss of money, but argues he suffered an ascertainable loss of property because he surrendered his home pursuant to the terms of the Agreement. Significantly, however, the loss of property must be the "result of the use or employment by another person of" an unfair or deceptive practice.  Mont. Code Ann. § 30-14-133(1). Although Jacobs vacated his home, he agreed to do so voluntarily in exchange for payment of $17,500.  In fact, Jacobs vacated his home in June 2014, before the Agreement was even executed.  And most significantly, all of the unfair and deceptive acts he alleges in this case – the failure to foreclose within a reasonable time, the sending of default notices and other communications, and the credit reporting – all took place after he vacated his home.  There is simply no evidence that those allegedly unfair and deceptive acts caused Jacobs to lose his home.  Because Jacobs has not come forward with any evidence that he

suffered an "ascertainable loss of money or property," his claim under the Montana Consumer Protection Act fails as a matter of law.

**D.    Equitable Relief**

Jacobs final claim is one for equitable relief.  He asks for a declaratory judgment establishing that Defendants shall "conduct a non-judicial foreclosure of the deed of trust on the subject property without further delay; shall take title to such property; shall not be entitled to any deficiency judgment or claim of deficiency against Jacobs; shall release Jacobs from any and all further obligations under the loan documents; and shall issue a corrective report to all credit-reporting agencies showing the loan with Jacobs as fully-settled."  (Doc. 31, at 8-9).

Defendants move for summary judgment on the ground that this claim is moot because the non-judicial foreclosure was completed on September 1, 2016.  A claim for equitable relief is moot when the challenged activity ceases and "could not reasonably be expected to recur" unless there is a possibility of "continuing, present adverse effects."  *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1009 (9th Cir. 1978); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

Under this standard, Jacobs' claim for injunctive relief is largely moot.  The fact that the non-judicial foreclosure has taken place means that there is no possibility that the conduct Jacobs complains of can be repeated.  Jacobs no longer

has title to the property, has no further obligations under the loan documents, and there can be no deficiency judgment. See Mont. Code Ann. § 71-1-317. Jacobs claim for equitable is thus moot to the extent he asks for an order stating that Defendants must foreclose on the property, must release him from any obligations under the loan documents, and are not entitled to a deficiency judgment.

To the extent Jacobs asks the Court to order Defendants to issue "a corrective report to all credit-reporting agencies showing the loan with Jacobs as fully-settled," his claim should be dismissed for other reasons. As the party seeking injunctive relief, Jacobs must show both "that 'he has a legitimate cause of action, and that he is likely to succeed on the merits of that claim.'" *Mack v. Anderson*, 380 P.3d 730, 733 (Mont. 2016). As discussed above, Jacobs claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and violations of the Montana Consumer Protection Act are preempted by the Fair Credit Reporting Act to the extent they seek damages based on Defendants' alleged credit reporting activities. Because those claims should be dismissed to the extent they are based on Defendants' alleged credit reporting activities, his claim for injunctive relief should be dismissed to the extent it seeks to stop those credit reporting activities.

**E.    Punitive Damages**

Jacobs' Complaint also contains a request for punitive damages. Under Montana law, punitive damages may not be recovered in a breach of contract action. Mont. Code Ann. § 27-1-220(2). Because Jacobs' breach of contract claim for nominal damages is the only claim that survives summary judgment, he is not entitled to punitive damages.

### F.    ReconTrust

ReconTrust argues it is entitled to summary judgment on all claims for the additional reason that it did not have any obligations under the Agreement, and had no ability to enforce its terms. As the successor trustee under the Deed of Trust, ReconTrust did not service the loan and claims it merely served as repository for the Deed of Trust. Because it never acted as servicer of the loan, ReconTrust never sent Jacobs any communications with regard to servicing the loan and never reported information regarding the loan to any credit reporting agencies or credit bureaus. Although ReconTrust was named as a defendant in the underlying foreclosure action and signed the Agreement, it was simply the trustee and had no contractual duties with respect to the foreclosure. Because Jacobs has not come forward with any evidence that ReconTrust breached the terms of the Agreement, and there is no evidence of a special relationship between ReconTrust and Jacobs, his claims against ReconTrust should be summarily dismissed.

**V.** **Conclusion**

For the reasons set forth above,

IT IS RECOMMENDED that Defendants' motions for summary judgment be DENIED as to Jacobs' breach of contract claim for nominal damages based on Bank of America's and SLS's alleged failure to foreclose in a reasonable time, but GRANTED in all other respects.

DATED this 19th day of April, 2017.

Jeremiah C. Lynch
United States Magistrate Judge